Hon. R. C. WATTS, ASSOCIATE JUSTICE AND CHIEF JUSTICE.

Hon. THOS. P. COTHRAN, ASSOCIATE JUSTICE

Hon. J. HARDIN MARION, ASSOCIATE JUSTICE

Hon. EUGENE S. BLEASE, ASSOCIATE JUSTICE

Hon. JOHN G. STABLER, ASSOCIATE JUSTICE

Hon. JESSE F. CARTER, ASSOCIATE JUSTICE

---

12117

LYNCH v. LYNCH

(136 S. E., 25)

1. DIVORCE—GRANTING OF TEMPORARY ALIMONY AND SUIT MONEY IS WITHIN DISCRETION OF JUDGE.—Granting of temporary alimony and suit money is within the wise discretion of judge to whom motion is addressed.

2. DIVORCE—AMOUNT OF ALIMONY DEPENDS ON EXTRAVAGANCE OF HUSBAND'S MISCONDUCT AND PARTICULAR CIRCUMSTANCES.—Amount of alimony depends largely upon extravagance of the husband's misconduct and circumstances of each particular case.

3. DIVORCE—TEMPORARY ALIMONY OF $100 A MONTH AND $150 ATTORNEYS' FEES HELD WARRANTED.—Award of $100 a month as temporary alimony and $150 as attorneys' fees *held* warranted by facts before trial judge.

Before SHIPP, J., Florence, October, 1925. Affirmed.

Suit for divorce by Essie B. Lynch against W. S. Lynch. From an order granting temporary alimony and suit money, defendant appeals.

The following is plaintiff's complaint:

"(1) That heretofore, on the 31st day of October, 1900, plaintiff and defendant were united in marriage, and that for many years thereafter they lived together as husband and wife, and that defendant was, so far as plaintiff knew, faithful to his marriage vows, and that he supplied the material needs of plaintiff and of the two children born to them, one a boy, now 20 years of age, and the other a girl of 22 years of age.

"(2) That, as plaintiff is now informed and believes, defendant, for more than five years, has been unfaithful to her, and as she is informed and believes, has consorted habitually with other women, in violation of the law and of his duty to plaintiff and their children; such specific instances of immorality, insult to plaintiff and their children, and disregard of the decencies of life as he has been guilty of, to the personal knowledge of plaintiff, being in detail in part as follows, to wit:

"(a) That, during the month of July, 1922, defendant, being a practicing physician, was maintaining in their home, at Lake City, S. C., as hospital quarters, some of the rooms of their dwelling, in which his patients were quartered from time to time, and had in his home, ostensibly as a professional nurse, a Miss Mae Hunt. That he was almost constantly with her, both at the home and on his trips through the country. That on a night during July, 1922, plaintiff having gone into the town of Lake City with the intention of going to a moving picture show, met the defendant and said Mae Hunt, and was told by defendant that he had been called to Cowards to bring a patient to the hospital. That not expecting to return at once, she gave defendant the keys to their home, in order that he might have access to the home on returning with the patient, and told him that she was going to the pictures. That soon afterwards, a friend having called on her, she abandoned her intention of going to the pictures and returned home with her friend. That, on reaching her home, defendant's automobile was parked in

front, and the home was in darkness and all the doors were locked. That, after several efforts to find an entrance, the lights were switched on in the house, and she discovered the defendant and said Mae Hunt together in her home. That she demanded an explanation, and that, during the discussion which followed, the said Mae Hunt, in the presence of the defendant, cursed plaintiff, and, upon being ordered by plaintiff to leave the home, refused to do so, saying in the defendant's presence that he (Dr. Lynch) would take care of her. That, notwithstanding this situation the defendant and said Mae Hunt went away in his automobile and did not return until about midnight. That plaintiff stated to defendant that she would leave the home unless the said Mae Hunt was required to leave. That defendant refused to comply with this request of plaintiff, and plaintiff was forced to call upon Dr. R. W. Hardin, who happened to be present, to carry her to Scranton, where she visited friends.

"(b) That, previous to the night above mentioned, defendant had contracted a habit of going in and out of the home for weeks at a time without at any time speaking to plaintiff, totally ignoring her, at one time apparently being offended, however without any excuse therefor, with one member of the family, and at another time with another.

"(c) That, during the month of August, 1922, plaintiff having visitors in the home, defendant, without any excuse therefor, became enraged, and, in the presence of plaintiff and in a most discourteous and insulting manner, both to plaintiff and to the visitors, ordered her visitors out of the house, thereby causing plaintiff to be humiliated and chagrined.

"(d) That, after the occurrence in August, she was away from home for two or three weeks, but, the said Mae Hunt in the meantime having left, plaintiff returned to her home, and defendant was somewhat more considerate of plaintiff and his family, until about the 6th day of November, 1922, when said Mae Hunt returned—the defendant having in the meantime established immediately in front of the home

a small building for use as an infirmary and having engaged Miss Hunt as supervising nurse.

"(e) That, previous to this return of Miss Hunt, the defendant indicated to plaintiff that he was repentant for his previous misconduct, urged plaintiff to join him in attempting to make the infirmary a success and to invite Miss Hunt to take her meals in their home, but that plaintiff, knowing of their relations, refused to permit Miss Hunt to come into her home, not so much on account of the well-known intimacy between her and the defendant, but on account of the example and effect of such conduct as they were engaging in upon her children, one of whom was a young girl just approaching womanhood.

"(f) That the said Mae Hunt remained in the infirmary until September 17, 1923, on which date, plaintiff having been informed that the conduct of the defendant and the said Mae Hunt had become so scandalous as to become the matter of public notoriety, which the community was threatening to take in hand, on the invitation of another nurse, went to the infirmary, and demanded that she leave the infirmary, whereupon, in the presence of defendant and a Mr. Gregory, an acquaintance of plaintiff in Lake City, the said Mae Hunt struck plaintiff, and was restrained from doing plaintiff further bodily injury, not by the defendant, but by a casual acquaintance.

"(g) That, after the altercation last mentioned, the defendant went away in his automobile with the said Mae Hunt, and, as plaintiff is informed and believes, carried her to Florence and procured lodging for her there, and that soon afterwards plaintiff received a letter from an attorney of the city of Florence advising that he was retained to bring suit for Miss Hunt for damages, and that, when this information was communicated by plaintiff to defendant, instead of indicating an intent to aid plaintiff, he undertook to convince her that Miss Hunt had a just complaint against her and would probably recover judgment against her. That

thereafter, as she is informed and believes, she and the defendant maintained a constant correspondence in terms of endearment such as should be used only between husband and wife. That, during that period, the defendant was constantly going away, without notice to plaintiff, and was absent two or three days at a time during almost every period of two weeks, and that, from the character of the correspondence between the two, she believes that on these trips he was visiting and consorting with the said Mae Hunt.

"(h) That, during all this time, defendant was taking his meals in the home, they being prepared and served by plaintiff, but that for quite a long time, while coming for and taking his meals, he utterly ignored plaintiff and the other members of the family, never deigning to speak to one of them, and acting in such an insulting manner that plaintiff finally adopted the practice of placing his meals on the table and leaving them to be taken by him alone, which practice continued until about the 15th day of October, 1924, at which time he notified the family grocer to reduce the family account to not exceeding $50 per month, and discontinued taking his meals in the home, and established himself in the infirmary immediately in front of the home, where he has since made his home and taken his meals. That notwithstanding his treatment of her, he would send for plaintiff from time to time to assist him in some of the operations at the infirmary, but, even while she was assisting him, he refused to speak to her.

"(i) That on the night of December 25, 1924, he brought the said Mae Hunt to the infirmary with him again, and that he and she remained in the hospital until the night of December 26th of the same year, and that on January 11, 1925, she returned to the infirmary and remained until March 30, 1925, when she left again and remained away until July 17, 1925, when she returned, and that she has remained to the present time, she and the defendant living together in the infirmary as the sole occupants thereof, to all outward ap-

pearances as man and wife, but that, during that period, they have left together each week end in an automobile, and have remained away until the beginning of the following week, when they have returned together.

"(j) That on the 28th day of September, 1923, defendant went to Richmond for the ostensible purpose of carrying his daughter to and entering her in a school in that vicinity, and that, as plaintiff is informed and believes, the said Mae Hunt accompanied him to Richmond on the same train on which his daughter traveled, and returned with him to South Carolina on the following day.

"(3) That, during the month of March, 1923, having occasion to visit the infirmary for a remedy for her son, on entering, during the late hours of the night, the room occupied by her husband, she discovered him occupying the same bed with another nurse, and that, notwithstanding this discovery and his knowledge of it, the defendant continued to keep the said nurse in his service until some friend of hers from Columbia came to Lake City, as plaintiff is informed and believes, on account of the reported misconduct at the hospital, and induced her to return to Columbia.

"(4) That, as indicated above, the defendant has been guilty of cruelty, inhumanity, and illegal conduct in the presence of plaintiff, under such circumstances and to such extent as to make it impossible for her to submit thereto. That he has left the home previously provided by him and has made his home elsewhere. That he has, since about the month of May, 1924, failed and refused to supply plaintiff with any means of support, except that during part of the time he has procured provisions for her, and except that he has left the home to be occupied by her, if she should be willing to occupy it without protection and alone, in the immediate vicinity of the infirmary, in which he is living openly with other women, and that, on account of her inexperience and condition of her health, she is unable to earn

a support, and that she is not possessed of sufficient property to yield a reasonable support for her.

"Wherefore, she respectfully prays that the matters and things therein alleged may be inquired into; that the defendant may be ordered by the Court to pay to her temporary alimony, pending the determination of this suit, of the sum of $150, beginning at the time defendant discontinued furnishing her support; that he may be required to pay reasonable attorneys' fees for the services rendered and to be rendered by her attorneys; that a decree may be made requiring him to make provision for such support and maintenance as she is properly entitled to, and for such other and further relief as may be just.

*Messrs. C. W. Muldrow* and *R. E. Whiting* for appellant, cite: *Grounds for allowance of temporary alimony and attorneys' fees:* 130 S. C., 511; 125 S. E., 137; 128 S. C., 460; 122 S. E., 500; 119 S. C., 10; 111 S. E., 792; 115 S. C., 326; 105 S. E., 700; 113 S. C., 128; 101 S. E., 566; 112 S. C., 126; 99 S. E., 754; 104 S. E., 76; 88 S. E., 272; 100 S. C., 298; 84 S. E., 870; 94 S. C., 204; 77 S. E., 865; 91 S. C., 245; 74 S. E., 360; 68 S. C., 123; 46 S. E., 945; 60 S. C., 426; 38 S. E., 802; 10 Rich. Eq. 163; 1 Rich. Eq. 288; 1 McC. Eq., 197; 80 Am. Dec., 677, note. *Wife may bind husband to pay for her necessaries:* Long on Domestic Relations: 240. *Non-support of wife insufficient ground for divorce:* 10 Rich. Eq. 176; 14 Cyc. 624. *Non-support of wife a misdemeanor:* Crim. Code 1922, Sec. 20. *Amount of alimony dependent upon financial position of parties:* 9 Rich. Eq., 570; 1 R. C. L., 912.

*Messrs. Willcox & Hardee* for respondent, cite: *Allowance of temporary alimony and attorneys' fees made on prima facie showing in case:* 1 R. C. L., 893 and 897. *Condonation of old offenses no defense to action on subsequent offenses:* 128 S. C., 460; 122 S. E., 500. *Plaintiff made prima facie case for relief demanded:* 130 S. C., 511; 125 S. E., 737. *Granting of temporary alimony and suit money within*

*discretion of trial judge:* 128 S. C., 533; 123 S. E., 206. *Wife though having some capital entitled to alimony if her income insufficient:* 1 R. C. L., 895. *Cases since overruled:* 60 S. C., 427; 10 Rich. Eq., 163. *Treatment justifying wife in leaving husband's home:* 68 S. E., 123.

December 8, 1926.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE RAMAGE.

This is an appeal from an order of his Honor, Judge Shipp, granting temporary alimony in the sum of $100 per month, and the further sum of $150 as an attorney's fee.

The plaintiff charged defendant, her husband, with acts of immorality, with insulting her, and misconduct of a very gross and grave nature. The reporter will set out her complaint in the report of the case, and this will show with sufficient clearness her contentions for all practical purposes.

The case of *O'Neal v. O'Neal,* 128 S. C., p. 533; 123 S. E., 206, is authority for the proposition that the granting of alimony (temporary) and suit money, is within the wise discretion of the judge who hears the motion.

Chancellor Wardlaw says:

"The amount of alimony depends largely on the extravagance of the husband's misconduct." *Thompson v. Thompson,* 10 Rich. Eq., 424.

"The amount to be allowed as alimony depends on the circumstances of each particular case." *Id.*

"That the husband lived in adultery with another woman is a circumstance entitling the wife he has abandoned to a large share of his income." *Id.*

"The conjugal conduct of the parties, the extent of their respective incomes, the sources of these incomes, the condition in life of the wife, are all circumstances to be considered." *Id.*

It appears to the Court from the cases of *Leysath v. Leysath,* 130 S. C., 511; 125 S. E., 737, and *Cleveland v. Cleveland,* 128 S. C., 460; 122 S. E., 500, and especially the reas-

oning of that able and distinguished Judge, Mr. Justice Woods, in *Levin v. Levin*, 68 S. C., 123; 46 S. E., 945, that Judge Shipp was right in his conclusions in this case.

The following facts among others came before him: That plaintiff found defendant and another woman in her home together in a darkened room, and that upon demanding an explanation, the other woman cursed plaintiff and refused to leave when plaintiff asked her to leave, saying in defendant's presence that he (defendant) would take care of her; that defendant would go for weeks without speaking to plaintiff, his wife; that defendant was on one occasion insulting to plaintiff and her guests in her home; that the other woman struck plaintiff and was restrained by a third party (and not defendant) from doing plaintiff further bodily harm; certain very compromising letters written by the other woman to defendant, and which were spread on the record in this case. There are other matters in the case that convince this Court that Judge Shipp was right in his order in finding that a *prima facie* case was made out. It may be that all these matters will be explained or disproved on the trial of the case. This Court makes no finding as to the truth of any matters; for the reason that we wish the trial on the circuit on the merits to be free and untrammeled by any suggestion from this Court. All we find is that there is no error shown by the record in the action of Judge Shipp in his order.

It is the judgment of this Court that the order of Judge Shipp be affirmed from the showing made in this case, and upon the authority of the decisions of this Court on the subject.

Order affirmed.

Messrs. Justices Watts, Cothran, Blease, and Stabler, concur.